**CHARLES E. BEARD, INC., d/b/a
Security Microfilm Company**

v.

**CAMERONICS TECHNOLOGY CORPO-
RATION, LTD.; Cameronics Interna-
tional, Inc., and McDonnell Douglas
Corporation.**

Civ. A. No. B–87–1359–CA.

United States District Court,
E.D. Texas,
Beaumont Division.

Nov. 2, 1989.

See also 120 F.R.D. 40.

 

Jon B. Burmeister, Moore, Landrey, Garth & Jones, Beaumont, Tex., for plaintiff.

Gerald T. Holtzman, Tom Bayko, Andrea M. Johnson, Holtzman & Urquhart, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

COBB, District Judge.

This diversity action brought by plaintiff Charles Beard, Incorporated, of Texas against defendant McDonnell Douglas Corporation of Missouri, was tried on September 19–21, 1989. The defendant moved for an instructed verdict when plaintiff completed its case in chief, which the court denied. At the close of all the evidence, McDonnell Douglas re-urged its motion for directed verdict.

### I.

*Factual and Procedural Background*

In December 1985, Beard entered into a distributorship agreement with Cameronics Technology Corporation, an Australian company. McDonnell Douglas was not a party to this agreement, nor was there a written agreement between the defendant and the plaintiff. Pursuant to this exclusive distributorship agreement, in 1985 Cameronics manufactured and shipped a sophisticated $50,000 camera and an automatic film processor to be used with the camera to Beard. Beard agreed to sell Cameronics products, specifically the camera, in certain states of the United States. Numerous problems developed between Beard and Cameronics as to the performance of the distributorship agreement.

McDonnell Douglas initially introduced the parties to each other. Later, McDonnell Douglas attempted to facilitate communication between Beard and Cameronics. McDonnell Douglas was involved as a result of an agreement with the Australian government, which permitted McDonnell Douglas' sale of fighter aircraft to Australia. This agreement also required, in part, that McDonnell Douglas provide some un-

stated marketing assistance to Australian companies, similar to Cameronics, in an attempt to balance or offset trade between the two countries. The agreement contained, as well, other methods for McDonnell Douglas to achieve this trade or offset balance (e.g., the purchase of Australian goods for McDonnell Douglas' production here). In providing marketing assistance to Cameronics, McDonnell Douglas, in part, offered information to U.S. companies about Cameronics. If Cameronics sold its cameras in the American market, McDonnell Douglas received paper "offset" credits with the Australian government. The credits went toward satisfying McDonnell Douglas' offset goal, set forth in the above noted agreement.

Beard claimed that McDonnell Douglas—through its employees Drew Lindsley and Greg Smith, motivated by this offset credit, made promises, assurances and representations to Beard about Cameronics and its products. Plaintiff Beard asserted negligence, breach of warranty, promissory estoppel, equitable estoppel, breach of contract, and Texas DTPA [1] violations by the defendant. Plaintiff claimed many damages, including lost profits and loss of business reputation, resulted from McDonnell Douglas' conduct.

Cameronics was not a party at the time of trial, having previously gone into receivership in the Australian courts and Beard settled his claim against the receiver for Cameronics.

## II.

### Plaintiff's Claims

■ *Breaches of Warranties.* Plaintiff claims the defendant breached implied and express warranties to plaintiff. The court finds as a matter of law that McDonnell Douglas was neither a "seller" nor a "merchant" of the goods at issue in this case. *See* TEX.BUS. & COM.CODE ANN. § 2.313(a), § 2.103(a)(4), and § 2.314(a). McDonnell Douglas cannot be held liable for any warranty relating to those goods, and as a matter of law, plaintiff cannot

recover for various alleged breaches of warranty.

■ Concerning implied warranty of merchantability, there was no evidence the goods produced by Cameronics were in any way "defective" at the time they left Cameronics' possession. *See Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442 (Tex. 1989); *Fitzgerald v. Caterpillar Tractor Co.,* 683 S.W.2d 162, 163–64 (Tex.App.— Fort Worth 1985, writ ref'd n.r.e.); *Ford Motor Co. v. Tidwell,* 563 S.W.2d 831, 835 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r. e.).

■ As to any claim of breach of an implied warranty for a particular purpose, there was no evidence that defendant McDonnell Douglas knew or had reason to know of any particular purpose for which plaintiff was going to use this product. The failure to present evidence as to this essential element is fatal to plaintiff's claim. *See Two Rivers Co. v. Curtiss Breeding Service,* 624 F.2d 1242, 1251–52 (5th Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 348 (1981).

■ To the extent that plaintiff's claim under the Texas Deceptive Trade Practice Act ("DTPA") is based on any alleged expressed or implied warranties, the DTPA claim fails as well. The DTPA does not create any warranties. Any warranty actionable under the DTPA must be established independently of the Act. *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Insurance Co.,* 832 F.2d 1358, 1373 (5th Cir.1987); *LaSara Grain v. First National Bank,* 673 S.W.2d 558, 565 (Tex.1984).

Plaintiff also claims, under general breach of contract theory, that the defendant assured plaintiff it either would "guarantee" the "performance" of Cameronics and/or provide an "auto processor," a Cameronics product. The claimed promises and assurances made by the defendant to the plaintiff, if any, were made *after* Beard entered into the exclusive Cameronics distributorship agreement in December 1985. There was no evidence that Beard was

---

1. § 17.46 *et seq.* Texas Business and Commercial Code, Vernon's Annotated Texas Statutes.

provided and relied upon any assurances or promises of McDonnell Douglas' employee, Greg Smith, prior to the execution of his distributorship agreement. The evidence showed that the assurances or promises came after Beard had discussed the terms of the agreement with Colin Dunne, Cameronics' representative, prior to signing the agreement.

■ To the extent that Beard's claim is based on a guarantee of Cameronics' performance, Beard's claim fails for several reasons. First, the "guarantee" is unenforceable as an oral promise. A promise by one to answer for the debt, default, or miscarriage of another falls within the statute of frauds and consequently must be in writing. TEX.BUS. & COM.CODE § 26.01(b)(2) (Vernon 1987). If the promise is not in writing, it is unenforceable. *Neff v. Ulmer*, 404 S.W.2d 644, 646 (Tex.Civ. App.—Amarillo 1966, writ ref'd n.r.e.); *Jordan v. Crisp*, 278 S.W.2d 482, 485 (Tex.Civ. App.—Amarillo 1955, writ ref'd n.r.e.).

■ The court also finds Beard's contract claims fail because Beard offered no evidence that the statements of Smith or Lindsley were made with the authority, expressed or implied, of McDonnell Douglas. Under Texas law, the actions of an agent are not presumed to be within the scope of his authority. *In re Westec Corp.*, 434 F.2d 195, 200 (5th .Cir.1970); *Cotton Belt R & R v. Hendricks*, 768 S.W.2d 865, 870 (Tex.App.—Texarkana 1989, no writ). Employment standing alone does not clothe the employed person with the powers of an agent. *Duke v. State*, 725 S.W.2d 289, 290 (Tex.App.— Houston [1st Dist.] 1986, no petition); *Vahlsing Christina Corp. v. Ryman Well Service*, 512 S.W.2d 803, 812 (Tex.Civ.App. —Corpus Christi 1974, writ ref'd n.r.e.). The burden is upon the plaintiff to present evidence that he investigated not only the fact of the alleged person's agency, but the scope and effect of his power and authority. *Verna Drilling v. Parks–Davis Auctioneers*, 659 S.W.2d 877, 881 (Tex.App.— El Paso 1983, writ ref'd n.r.e.); *Boucher v. City Paint and Supply, Inc.*, 398 S.W.2d 352, 356 (Tex.Civ.App.—Tyler 1966, no writ).

■ There is no evidence in the record that plaintiff made any such inquiry. The only evidence presented is that plaintiff spoke to Smith and Lindsley over the phone, and never spoke with any other McDonnell Douglas representative. Without proof of some reasonable inquiry, the court finds plaintiff did not meet his affirmative evidentiary burden.

■ There was no evidence that these particular employees had any authority to bind the defendant to any contract. There was no evidence that there was actual or apparent authority vested in Smith and/or Lindsley so as to bind the defendant to a contract guaranteeing a foreign company's contractual performance owed to Beard. A contract executed by an unauthorized agent, who makes the agreement on behalf of another, not in his individual capacity, is not enforceable. If Smith and/or Lindsley did make an agreement allegedly on behalf of the defendant, it was unenforceable. The record does not contain any evidence of such a representation. *Angroson, Inc. v. Independent Communications, Inc.*, 711 S.W.2d 268, 271 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

PROMISSORY ESTOPPEL

■ Plaintiff's action relying on promissory estoppel is without merit. The promissory estoppel exception to the statute of frauds is very narrow. It will operate only "where the promise was 'to sign a written agreement which itself complies with the statute of frauds.'" *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Texas 1988). There was no evidence that Smith or Lindsley made any representation as to the statute of frauds or that Smith or Lindsley promised to put the alleged "contracts" into writing. Plaintiff asserted the claim of promissory estoppel as an exception to defendant's affirmative defense of the statute of frauds. To be successful, the party bringing the claim of promissory estoppel must show that there has been a misrepresentation as to the statute of frauds. *21 Turtle Creek Square, Ltd. v. New York*

*State Teacher's Retirement System*, 432 F.2d 64 (5th Cir.1970); *Cooper Petroleum Co. v. LaGloria Oil & Gas Co.*, 436 S.W.2d 889, 896 (Tex.1969); *Adams v. Petrade International, Inc.*, 754 S.W.2d 696, 707 (Tex.App.—Houston [1st Dist.] 1988, writ den'd).

## EQUITABLE ESTOPPEL

■ Plaintiff's position that the doctrine of equitable estoppel operates as a valid claim is untenable. The doctrine, like the doctrine of waiver, does "not operate to create liability where it does not otherwise exist." *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex.1988) (citation omitted). *Southland Life Insurance Co. v. Vela*, 147 Tex. 478, 217 S.W.2d 660, 663 (1949).

## BEARD'S CLAIM UNDER THE DECEPTIVE TRADE PRACTICE ACT

■ Plaintiff has claimed the defendant violated unspecified provisions of the Texas Deceptive Trade Practices Act. In response, defendant introduced evidence that plaintiff did not provide adequate DTPA notice to defendant prior to filing plaintiff's lawsuit. Under § 17.505(a), a plaintiff is required to serve notice to defendant at least 30 days before filing a lawsuit. The Fifth Circuit Court of Appeals in *Boyd International, Ltd. v. Honeywell, Inc.*, 837 F.2d 1312 (5th Cir.1988) held that the failure to provide proper notice under the DTPA was fatal to plaintiff's claim. As the Fifth Circuit noted, § 17.505 requires "as a prerequisite to filing suit [that] ... a consumer shall give notice to the person at least 30 days before filing the suit...." *Id.* at 1314.

In the instant case, plaintiff initially filed in state court on October 26, 1987 (thereafter removed to federal court). The original lawsuit references a "statutory" claim, later identified in an interrogatory answer as the DTPA. The evidence indicated the plaintiff intended to assert a DTPA claim at the inception of this lawsuit. Plaintiff sent only one notice letter—in September 1988, almost a year after it filed the first complaint. Thereafter, plaintiff amended its complaint. Plaintiff offered no evidence excusing its failure to send a timely DTPA notice letter.

The court finds that this issue was properly before the court. Evidence about the lack of notice was elicited by defendant on cross-examination of Mr. Beard. Plaintiff presented no evidence refuting defendant's position. Therefore, plaintiff failed to serve a proper notice letter upon defendant prior to filing its lawsuit. The belated attempt to do so in September, 1988, does not suffice for the purpose of the DTPA. *See* 837 F.2d at 1315–16.

■ Further, the DTPA does not attach derivative liability to a defendant based on an innocent involvement in a business transaction. *Home Savings Ass'n v. Guerra*, 733 S.W.2d 134, 136 (Tex.1987); *Cameron v. Terrell & Garrett*, 618 S.W.2d 535, 541 (Tex.1981); *Miller v. Presswood*, 743 S.W.2d 275, 279 (Tex.App.—Beaumont 1987, writ den'd). *See Building Concepts, Inc. v. Duncan*, 667 S.W.2d 897, 901 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd, n.r.e.). The fact that the defendant had some involvement with the supplier and manufacturer of the camera at issue does not expose the defendant to DTPA liability. The Texas Supreme Court has held that a consumer cannot attempt to hold multiple defendants liable by showing them to be "inextricably intertwined." *Qantel Business Systems, Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 305 (Tex. 1988). As the *Qantel* court held, the mere existence of a "relationship" between the parties does not establish DTPA liability. *Id.* at 305. *Accord, Colonial Leasing Co. v. Kinerd*, 733 S.W.2d 671, 674 (Tex. App.—Eastland 1987, writ granted). The court finds that the evidence presented shows that defendant played an incidental role to the business transaction between Beard and Cameronics. Plaintiff presented no evidence that defendant was a producing cause of any of plaintiff's alleged damages, and the court instructed a verdict as a result of this failure on the essential element of causation.

Plaintiff asserted a negligence claim but presented no evidence that defendant owed a duty to plaintiff. The claim was abandoned during trial. *Moorehead v. Mitsubishi Aircraft International, Inc.*, 828 F.2d 278, 282 (5th Cir.1987); *R.J. Reagan Co. v. Kent*, 654 S.W.2d 532, 533 (Tex.App.—Tyler 1983, writ dism'd). The question of duty is a threshold question in a negligence action. *Leonard v. Aluminum Co.*, 767 F.2d 134, 136 (5th Cir.1985); *Wilcox v. Carina Maritime Corp.*, 586 F.Supp. 1475, 1477–78 (E.D.Tex.1984). If no duty exists, plaintiff's cause of action for negligence fails. *Leonard v. Aluminum Co.* 767 F.2d at 136–37; *Diversified, Inc. v. Gibraltar Savings Ass'n*, 762 S.W.2d 620, 622 (Tex. App.—Houston [14th Dist.] 1988, no writ).

Plaintiff claimed damages due to lost profits and business reputation, as well as damages related to other claims. The question of damages is no longer at issue, since this court found no liability on the part of the defendant McDonnell Douglas Corporation.

Having found that plaintiff's claims fail as a matter of law, and that there is a lack of sufficient evidence to support submitting this cause to the jury, the court finds that the motion for directed verdict should be granted.

Accordingly, it is ORDERED, ADJUDGED and DECREED THAT

(1) Defendant McDonnell Douglas' motion for directed verdict is GRANTED; (2) Plaintiff Beard's cause of action is DISMISSED; and (3) Costs of court shall be assessed against plaintiff.